IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | CR. NO. 2:06CR260-WKW |
| ) | |
| CHRISTOPHER ANTONIO WASHINGTON ) | |

**SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**

COMES NOW the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and in response to the Court's Order of March 5, 2007, the following is submitted:

1.  On Sunday, November 5, 2006, Montgomery Police Officers were informed that a complainant had reported that someone had shot at him with an assault rifle and fled in a white Chevy pickup. Police Officer S.E. Sims reported he was in the area of the reported shooting looking for the subject when he observed a white Chevy pickup with tinted windows so that he could not see who was driving the vehicle. The Chevy pickup tried to elude Officer Sims and other units which followed the pickup to the area of Amanda Lane and Manley Drive. The subject fled from the pickup at 3500 Manley Drive. Police officers observed an SKS assault rifle inside the pickup as the door had been left open when the suspect fled. The United States does allege Washington was the driver of the pickup and he confirmed this when interviewed following his arrest on November 9, 2006. The rifle was seen in plain view, however, the vehicle was impounded and an inventory search resulted in the seizure of the loaded rifle, two banana clips, and fifty-three 7.62x39 rifle rounds. Later, on November 5, 2006, a warrant check of

Christopher Washington revealed he had several misdemeanor warrants in Montgomery and was a felon.

 2. On Monday, November 6, 2006, Officer Sims received a call from police dispatch that an unknown complainant had called 911 and stated that a black male by the name of Christopher Washington had shot at him and fled the area of Traction Avenue in a green Trailblazer. Later, investigation reveals the vehicle to be a green Isuzu Rodeo. The complainant was not identified. On November 6, 2006, Officer Sims was on a traffic stop in the New Town area when he observed a green SUV drive past and he remembered the lookout for the green Trailblazer. He notified another police officer, Corporal Moore, to see if that might be Christopher Washington who may be going to 1817 Kansas Street where he sometimes stayed with his grandmother. After several minutes passed, Corporal Moore advised he had a subject flee from a green SUV at 1817 Kansas Street and Corporal Moore positively identified the subject who fled as Christopher Washington when Officer Sims showed Corporal Moore a photo of Washington. Again, the door of the vehicle was left open when the suspect fled and a box of ammunition and a receipt from Quik Pawn Shop on North Ripley Street was observed in plain view in the floorboard on the passenger side of the vehicle. The vehicle was not impounded on this occasion because it had been parked in the driveway of the subject's grandmother but the evidence was in plain view. The receipt had the box of ammunition listed on it and Christopher Washington was named as the purchaser. Officer Sims followed up with a visit to Quik Pawn Shop where he showed a picture of Christopher Washington to the clerk who identified that person pictured as being the person who purchased the ammunition.

 3. On November 9, 2006, Officer Sims returned to duty and learned that Washington had not been taken into custody. On that date, Officer Sims had made a traffic stop in the 1900

block of Johnson Street and observed a green vehicle in front of 1817 Kansas Street once again. After the traffic stop, Officer Sims coordinated with other officers to assist in apprehending the suspect. Before other units arrived, the vehicle began to move and Corporal Moore tried to initiate a traffic stop alone. When other officers arrived to assist, the driver fled on foot but was captured just south of 1817 Kansas Street. The subject, Christopher Washington, was taken into custody and after being advised of his rights and executing a wavier form, Washington admitted to being the subject who ran from police on Sunday with the SKS and also that he bought the box of ammunition from Quik Pawn Shop.

      4.      While the firearm found on November 5, 2006, was see in plain view, the United States submits that because the Chevy pickup had been the subject of a vehicle chase and the driver fled the vehicle leaving it abandoned on a city street, the vehicle was impounded. Police frequently remove and impound vehicles which jeopardize both the public's safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Once the vehicle was impounded, the Montgomery Police followed their routine practice of securing and inventorying the vehicle's contents.

      5.      When the police found the green SUV from which the suspect fled on November 6, 2006, they then knew that Washington was a felon. A search of the vehicle was done to see if it was stolen and a box of ammunition and receipt listing Washington as the purchaser was found. In addition, these items were in plain view since the door had been left open when the driver fled. The incriminating character of the ammunition was immediately apparent since the officers then knew Washington to be a felon. U.S. v. Rodgers, 924 F.2d 219 (11th Cir. 1991).

6.	Christopher Washington was the driver of the vehicle that was stopped on November 9, 2006. When he fled from the vehicle, a short foot chase began and he was taken into custody just south of 1817 Kansas Street.

7.	Corporal Robert Green advised Washington of his constitutional rights as the defendant stated in his affidavit. Corporal Green has advised that he saw no evidence that the defendant was under the influence of any substance. Corporal Green advised that the defendant appeared coherent and responsive and was able to understand the questions and made appropriate responses. A statement is voluntary where there is insufficient evidence to show the defendant was either drunk or suffering from alcohol withdrawal. Hubbard v. Haley, 317 F.3d 1245 (11th Cir. 2003). While there are many other factors to consider in determining if a statement is in fact voluntary, the defendant has only alleged being under the influence as a factor to his voluntarily making the statement being challenged.

Wherefore, premises considered, the United States submits the motion to suppress is due to be denied.

Respectfully submitted this the 7th day of March, 2007.

        LEURA G. CANARY
        UNITED STATES ATTORNEY

        /s/ Kent B. Brunson
        KENT B. BRUNSON
        Assistant United States Attorney
        Post Office Box 197
        Montgomery, Alabama 36101-0197
        Phone: 334.223.7280
        FAX: 334.223.7135
        E-mail: kent.brunson@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CR. NO. 2:06CR260-WKW |
| ) | |
| CHRISTOPHER ANTONIO WASHINGTON ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Richard (Cracker) Waldrop, Esq

    Respectfully submitted,

    LEURA G. CANARY
    UNITED STATES ATTORNEY

    /s/ Kent B. Brunson
    KENT B. BRUNSON
    Assistant United States Attorney
    Post Office Box 197
    Montgomery, Alabama 36101-0197
    Phone: 334.223.7280
    FAX: 334.223.7135
    E-mail: kent.brunson@usdoj.gov